## Lownes Estate

*Phineas O. Pitt* and *Charles W. Roberts, Jr.*, for accountant.

*I. J.* and *D. W. Vanartsdalen,* for Commonwealth.

SATTERTHWAITE, J., July 16, 1954.—The problem presented in this case is the construction of the testamentary provisions made by Cora E. Lownes, deceased, in order to ascertain the proper rate of inheritance taxes due by reason of her death.

Decedent died on February 21, 1953, leaving a will, duly probated, of which the following is a full copy:

"This is my will
Wed March 19, 1952

"As soon as I am Deceased, everything I own is to become the property immediately of Harriet G. Luff or Theodore C. Luff

"She is to give Clarence C. Luff $200.00 and Dorothy Luff Achuff $2.00.00

"Each one of my Great Grandchildren she is to give $25.00

"They, Harriet & Theo. are to take immediate possession of everything, immediately

"My papers in Box 147 First Nation Bank Newtown

"If neither of them are living it is to become the property of their children or heirs Clarence C. Luff or Dorothy Luff Achuff"

"Cora E. Lownes"

Harriet G. Luff, daughter and the sole heir of decedent, and Theodore C. Luff, Harriet's husband, both survive and both have qualified as administrators c. t. a. It has been stipulated that Clarence C. Luff and Dorothy Luff Achuff are their only children and that there are four great-grandchildren who survived decedent. It further appears from the pleadings that the words "Harriet and Theo." in the fourth paragraph of the will refer to the same persons as Harriet G. Luff and Theodore C. Luff.

Because the Transfer Inheritance Tax Law of June 20, 1919, P. L. 521, sec. 2, as last amended by the Act of December 21, 1951, P. L. 1713, 72 PS §2302, imposes a tax at the rate of two per cent on interests passing to a daughter or to lineal descendants of decedent and, by exclusion, at the rate of 15 per cent on interests passing to the husband of a daughter, it is obvious that the proper assessment of the inheritance tax due in this case involves the determination of testatrix's intended beneficiaries as found from the language used in the will.

The clear value of the estate subject to tax was appraised at $17,978.57. The register of wills, adopting the position that the daughter and her husband took an estate by the entireties, assessed tax thereon under the authority of Zipperlein Estate, 367 Pa. 622, at the rate of two per cent on one half thereof and 15 per cent on the other half. The daughter and her husband have appealed, contending that the entire estate, subject to

the charges noted, was given to the daughter with a merely substitutionary provision over for her husband, to be effective only if she predeceased her mother.

In support of the Commonwealth's theory of taxability, it is urged that the word "or" connecting the names of decedent's daughter and son-in-law in the first paragraph of the will should be read "and" which would thus create a tenancy by the entireties in them. While it must be admitted that there are cases in which, in order to carry out the improvidently worded intention of testator, the word "or" has been construed to mean "and", nevertheless, such a construction will not prevail unless absolutely necessary to support the evident testamentary meaning. The conjunction "or" in its usual grammatical sense has an alternative connotation; it imports a mutually exclusive choice or selection between two or more subjects. The resolution of the different possibilities is ordinarily determined by the language used considered in light of actual events as they come about. Usually, of course, the condition which controls the choice is expressly stated. But it may be impliable from the context taken in connection with commonly understood and generally recognized physical facts, particularly in the case of testamentary provisions. The use of the word "or" therein, even without more, in connecting subjects of decedent's bounty, quite commonly has been accepted as implying an intention to substitute the second taker upon the death of the first named before coming into enjoyment, as during the lifetime of testator or during a precedent life estate.

Thus, in Gilmor's Estate, 154 Pa. 523, the use of the words "or to their heirs" in connection with named legatees was held to constitute a substitutionary bequest to the heirs and so to prevent a failure of the legacy by lapse upon the death of the legatee. The argument that the word "or" was to be read "and" so

that the phrase would become words of limitation defining and establishing the absolute or fee simple nature of the estate of the first taker under the rule in Shelly's Case was expressly rejected: Feeney's Estate, 293 Pa. 273; Simpson's Estate, 304 Pa. 396; Golden's Estate, 320 Pa. 4, and German Estate, 78 D. & C. 496, are similar cases.

The decision in Bender v. Bender, 226 Pa. 607, is especially applicable to the within case. There testator devised real estate to his son, Johannes Bender "or his children". No other words in explanation appeared. The court held, in an action of ejectment between a grandchild of testator and a devisee under Johannes' will, that Johannes took an estate in fee simple upon his surviving testator, the words "or his children" creating no estate in them in such contingency and being merely substitutionary to provide for the possible predecease of the named devisee. The grandchild had argued that "or" should be read "and", a construction which had been adopted by the trial court. The Supreme Court, however, disagreed, stating at pages 611-12, as follows:

"Whence is derived the authority to make any alteration in the devise as written? Clearly this was a case where the learned court fell into serious error through attempting to construe something which did not call for construction. There was nothing in the devise that called for the application of artificial rules in order to discover the testator's intention. A testator must be allowed to be his own interpreter when he expresses himself in language free from obscurity, and which, as by him employed, conveys a certain definite meaning, to the exclusion of any other. When he succeeds in doing this he has expressed his own meaning, and that the law accepts as the equivalent of intention. That this testator so succeeded in this particular devise admits of no question. In grammati-

cal construction the devise is entirely correct; and it is so definite in expression and terms that but one meaning can be derived from it. It points unmistakably to an alternative gift, and with equal certitude to the intended alternate beneficiary. Why, then, shall there be an exposition of the devise contrary to the words used? That it is modified or changed in any way by subsequent reference to it in the will, can not be pretended, for it is not once referred to. That it conflicts with any general scheme which can be derived from the will cannot be urged, for there is not a single decision dependent upon it, or which cannot be enforced concurrently with it. Were the devise uncertain because of ambiguity in some of the words used, it is quite possible that sufficient could be found in other parts of the will to resolve the doubt; but, entirely intelligible and complete in itself, no borrowed light is needed for any purpose in connection with it. Ex vi termini the devise imports a substitutional gift, to provide against a possible failure of Johannes to take. This is peculiarly the case where the word 'or' is interposed between the name of the devisee and words of purchase descriptive of the alternative."

These considerations are equally applicable in the construction of the present will. The use of the word "or" prima facie signifies that the first taker, Harriet, takes exclusively as the natural and prime object of testatrix's bounty with an alternative provision for her husband, Theodore, only should she not take, that is, should she predecease her mother. That this was decedent's intention is unmistakably corroborated by the subsequent paragraphs of the will creating charges for the pecuniary legacies upon the estate given to the daughter, the direction in each case being "*she* is to give". Significantly, decedent did not say "*they* are to give". These provisions, if there be any doubt arising from the use of the disjunctive "or" in the first

paragraph of the will, render it apparent that Harriet G. Luff was, in the first instance, to have the benefit of the estate. It is well established in analogous cases where the quantum of the estate devised is indefinitely described, that an express charge of a sum in gross to be paid by the devisee is an indication that he is intended to take absolutely or in fee simple. See Eby v. Eby, 5 Pa. 461; Schoonmaker v. Stockton's Administrator, 37 Pa. 461; Fahrney v. Holsinger, 65 Pa. 388; Jackson's Estate, 179 Pa. 77; Fidelity Trust Company v. Bobloski, 228 Pa. 52; Crawford et al. v. Withrow, 314 Pa. 497. The reasoning underlying these decisions is equally appropriate here; it would be manifestly unfair and inequitable to hold that the party who personally must bear such charges should not have the fullest beneficial interest possible consistent with the language of the will.

The subsequent paragraphs of the will are inconclusive and of no particular assistance in determining the question. The Commonwealth argues that the provisions of the fourth paragraph, directing "Harriet & Theo." to take immediate possession of the estate, are corroborative of an intent in the first paragraph to give the estate to both of them. We do not agree with this contention but regard the fourth paragraph merely as a direction with respect to one of the matters involved in the administration of the estate and therefore the possible equivalent of the appointment of Harriet and Theodore as executors. The fact that the latter did not choose to qualify, as such, but, at a time when the present question was probably not in contemplation, instead took out letters of administration cum testamento annexo, does not militate against this conclusion. Their actions cannot determine the legal effect of the words used in the will and obviously no question of estoppel is involved since it makes no

difference to the Commonwealth whether they are acting as executors or as administrators c. t. a.

The last paragraph of the will also is inconclusive inasmuch as the contingent provisions over in case neither Harriet nor Theodore should survive would be equally consistent with either of the constructions urged by the respective parties in this case. The interlined words "or heirs" would provide for still further substitutionary words of purchase (rather than of limitation) in the event of the predecease of either of the children: Sorver v. Berndt, 10 Pa. 213. The words "Clarence C. Luff or Dorothy Luff Achuff" are purely descriptive of the word "children" which precedes them and may be disregarded as surplusage without changing the evident meaning. The plural word "children" obviously negates any choice between the two named takers who, in fact, are the only persons who fill the description of that generic term. If it were material, such use of the plural might well justify the substitution of the word "and" for "or" connecting the two names. In view of the charges imposed upon Harriet earlier in the will, however, as well as the absence of any such general description embracing both Harriet and her husband, we find no comparable evident intent to justify such a substitution in the first paragraph. The context does not necessarily indicate testatrix used the word "or" in both places in the same sense.

The Commonwealth also refers to well known principles established in connection with bank deposits in the names of husband and wife or husband or wife as further authority that a tenancy by the entireties was created under the will in question, irrespective of whether the word "or" is changed to read "and". We must agree that if decedent had stopped after writing the first paragraph of her will directing that her estate was to "become the property immediately

of Harriet G. Luff or Theodore C. Luff", and there were no other indication of her intention, prima facie an estate by the entireties would have been created notwithstanding the use of the word "or". In the case of bank accounts, the intention to create the entirety is assumed merely from the deposit in both names and from the fact of marital relationship, notwithstanding that the account is entitled "husband *or* wife": Klenke's Estate (No. 1), 210 Pa. 572; Sloan's Estate, 254 Pa. 346; Berhalter v. Berhalter, 315 Pa. 225; Geist v. Robinson, 332 Pa. 44; Berkowitz's Estate (No. 1), 344 Pa. 481; Gallagher Estate, 352 Pa. 476. While the contrast between the word "and" and the word "or" in such cases may, absent an express agreement on the question, have some effect on the power of either spouse alone to deal with the bank account without joint action, that factor does not derogate from the entireties nature of the account: Madden v. Gosztonyi Savings and Trust Company, 331 Pa. 476, 486-489.

Moreover, these principles are not confined to bank deposits. In Wilbur Trust Company v. Knadler, 322 Pa. 17, they were applied to mortgage trust certificates, and in Halstrick v. Halstrick, 56 D. & C. 349, they were held controlling as to United States savings bonds. While all the foregoing cases involved obligations to pay money and not interests in specific tangible real or personal property, nevertheless, none of them made any point of that fact. Indeed, the entireties presumption has been expressly held not to be based upon contract, either between the depositors or between the depositors and the bank (although in the usual case there is such an express understanding) ; rather it will arise even without such an agreement: Berhalter v. Berhalter, supra, at page 227; Bostrom v. National Bank of McKeesport, 330 Pa. 65; Geist v. Robinson, supra, at page 47; Berkowitz's Estate (No.

1), supra, at page 483. It is the relationship of husband and wife which is all important, in the absence of intention to the contrary. In Wilbur Trust Company v. Knadler, supra, for example, this factor was particularly pointed up since the entireties nature of the mortgage trust certificates was upheld notwithstanding that they had been previously issued in the name of the husband "or" a son and had been re-registered at the instance of the husband alone, without the joinder of the son, in the name of the husband "or" wife. Compare Gallagher Estate, supra, where it was held that the husband, having at his sole request changed the name of his personal bank account into the names of himself "or" his wife, had thereby created an estate by the entireties and could not thereafter sever or terminate the same merely by inducing the bank to strike his wife's name from the account.

However, as indicated, we believe that these principles merely state a factual presumption and will control only in the absence of any ascertainable intention to the contrary; we know of no rule of law which holds inexorably and arbitrarily that the naming of husband and wife in connection with the ownership of property necessarily and inevitably creates a tenancy by the entireties. In fact, it is well established that it is fully competent for husband and wife to hold other than as tenants by the entireties if such be the intention: Blease v. Anderson, 241 Pa. 198; Kleinschmidt Estate, 362 Pa. 353. It would likewise seem competent, therefore, for them not to be cotenants of any kind, even if both be named, if the intention be found, as we believe it has been here, to provide for substitutionary rather than coexistent interests in them. Accordingly, we are not confined to the first paragraph of this will, but must interpret the testamentary provisions in light of the intention of testatrix to be ascertained from a consideration of the

504

entire will, including its scheme of distribution, as well as its language, together with all of the surrounding and attendant circumstances: Lifter Estate, 377 Pa. 227, 231, and cases cited. Having done so, we come to the conclusion that the presumption of a tenancy by the entireties arising from the first paragraph of the will considered by itself is overcome by the subsequent provisions therein creating the personal charges for the pecuniary legacies against the wife alone.

*Order*

And now, July 16, 1954, for the reasons stated in the foregoing opinion, the within appeal is sustained and the action of the register of wills, in assessing any inheritance taxes due by reason of the death of decedent at a rate in excess of two percent of the clear value of the estate, is declared invalid and is hereby vacated and overruled. Costs are to be paid by the Commonwealth.